1

2

3

4

5

6

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7  ANDREW EDMUND GREGO, III, | No. 4:16-CV-05007-MKD |
| 8           Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| 9      vs. | |
| 10  COMMISSIONER OF SOCIAL | |
| 11  SECURITY, | ECF Nos. 14, 17 |
| 12           Defendant. | |

13      BEFORE THE COURT are the parties' cross-motions for summary

14  judgment. ECF Nos. 14, 17. The parties consented to proceed before a magistrate

15  judge. ECF No. 7. The Court, having reviewed the administrative record and the

16  parties' briefing, is fully informed. For the reasons discussed below, the Court

17  grants Plaintiff's motion (ECF No. 14) and denies Defendant's motion (ECF No.

18  17).

19

20

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

Plaintiff applied for disability insurance benefits and supplemental security income benefits on October 21, 2011, and October 27, 2011, respectively.  Tr. 219-25, 226-31.  In both applications, Plaintiff alleged a disability onset date of November 1, 2008.  Tr. 219, 226.  The claims were denied initially, Tr. 143-51, 152-60, and on reconsideration, Tr. 162-69, 170-79.  Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on June 17, 2014.  Tr. 31-80.  On August 29, 2014, the ALJ denied Plaintiff's claim.  Tr. 13-24.

At the outset, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to his disability benefit claim through September 30, 2012.  Tr. 15.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, November 1,

2008.  Tr. 15.  At step two, the ALJ found that Plaintiff has the following severe impairments: cervical degenerative joint disease; mild thoracic degenerative joint disease; lumbar degenerative joint disease; left shoulder ACL joint widening with history of fracture; major depressive disorder; attention deficit hyperactivity disorder; and alcohol and marijuana dependence.  Tr. 15.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 17.  The ALJ then concluded that Plaintiff has the following RFC:

> ... The undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he can no more than frequently handle and finger bilaterally, climb stairs and ramps, balance, stoop, kneel, crouch, or crawl, and never climb ropes, ladders, or scaffolds.  He should not be exposed to unprotected heights, dangerous machinery or commercial driving, and he should avoid concentrated exposure to extreme cold and vibrations.  He can do no more than lower semi-skilled tasks with no frequent change to routine, and no more than superficial contact with the general public.

Tr. 18-19.  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 22.  At step five, the ALJ found that, considering the Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as cafeteria attendant, mailroom clerk, and housekeeper/cleaner.  Tr. 23.  On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 31.

On December 22, 2015, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  See 42 U.S.C. § 1383(c) (3); 20 C.F.R. §§ 416.1481, 422.210.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed the medical opinion evidence;

2.  Whether the ALJ properly discredited Plaintiff's symptom claims;

3.  Whether the ALJ properly weighed the lay opinion evidence;[1]  and

4.  Whether the ALJ conducted a proper step five determination.

ECF No. 14 at 7.

_____

[1] Plaintiff lists this issue as the ALJ's consideration of lay opinion evidence.  The testimony Plaintiff cites was presented for the first time to the Appeals Council after the ALJ's decision.  The Court deems the issue one to be addressed on remand.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

# DISCUSSION

## A.  Medical Opinion Evidence

First, Plaintiff faults the ALJ for discounting the opinions of examining physician Shimoga Prakach, M.D.; treating physicians Wing Chau, M.D., and James Leedy, M.D.; and examining psychologist Tae-Im Moon, Ph.D.  ECF No. 14 at 9-14.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

Here, the ALJ rejected the medical opinions of four doctors set forth in DSHS evaluations for reasons that the ALJ generally applied to all the evaluations without providing much if any independent analysis of each individual opinion. The ALJ summarily rejected the medical opinions finding that the DSHS evaluations were (1) largely based on the claimant's self-reported symptoms; (2) conducted for the purpose of determining Plaintiff's eligibility for state benefits; (3) Plaintiff was likely aware that that the continuation of his state assistance was dependent upon the DSHS evaluations and thus had an incentive to exaggerate; and (4) the DSHS forms and rules are different than the Social Security forms and standards.  With respect to two of the opinions, the ALJ found that there is a possibility that the two doctors expressed the opinions out of sympathy for Plaintiff to aid him in obtaining benefits.  As discussed below, several of the reasons cited

above are contrary to well-established Ninth Circuit law.  Moreover, the Court

finds that the cursory treatment of the medical opinions without independent

analysis and explanation of how these reasons applied to each opinion is error and

remand is necessary for proper evaluation of the medical evidence.

*1. Dr. Prakash*

Examining physician Dr. Prakash opined on three occasions, in November

2009, June 2010, and April 2011, that Plaintiff's back and shoulder pain limited

him to sedentary work.  Tr. 20 (citing Tr. 371,[2] 379, 386-87).  The ALJ gave these

opinions limited weight.  Tr. 21.  Because Dr. Prakash's opinions are contradicted

---

[2] The ALJ cites Dr. Prakash's opinions at Exhibit 1F/22 and 1F/30.  Tr. 20 (citing

Tr. 371, dated November 9, 2009; Tr. 379, dated November 20, 2010).  The ALJ's

decision lists opinion dates of June 2010, April 2011, and November 2011.  Tr. 20.

The April 2011 opinion referred to is at Tr. 386-87.  The ALJ's reference to a

November 2011 opinion by Dr. Prakash appears to be a scrivener's error.  Because

all of the opinion dates the ALJ cites are after onset on November 1, 2008, any

error with respect to the dates referenced is harmless because it does not affect the

result.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th

Cir. 2008) (some errors are legally harmless, such as errors which do not affect the

ultimate result of the analysis).

by Dr. Drenguis and Dr. Hurley, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Prakash's opinions.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ opined that DSHS evaluations (such as those provided by Dr. Prakash) are largely based on a Plaintiff's self-reported symptoms, and the ALJ found Plaintiff less than credible.  Tr. 21.  An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as incredible.  *See Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008).  Here, however, it is not clear that Dr. Prakash's opinion is based "to a large extent" on Plaintiff's self-report as opposed to clinical findings cited in the opinions, and presumably the observations made during the evaluation of Plaintiff.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (when explaining her reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion, rather, the ALJ must "set forth [her] own interpretations and explain why they, rather than the doctors', are correct.").  Instead, the first form that Dr. Prakash completed, in November 2009, Tr. 368-71, listed examination findings such as that Plaintiff's range of motion was restricted in both shoulders; and that Plaintiff's "entire spine [was in] pain."  Tr. 369.  Although complaints of pain are based on self-report, restricted range of motion is not.  Similarly, in June 2010, Dr. Prakash's examination findings stated that Plaintiff's shoulder range of motion was limited and painful; furthermore, a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

1   straight leg raising test was negative, which again would indicate that examination

2   findings do not appear "largely based" on Plaintiff's self-reported symptoms.  Tr.

3   378.  Further, Dr. Prakash's April 2011 report indicated that the report was not

4   from records, and "a physical evaluation for incapacity evaluation" was not

5   performed.  Tr. 387.  This record at best appears ambiguous, in that it is unclear

6   whether the report was based on an examination (although less than a full

7   incapacity evaluation) or on Plaintiff's self-report, or both.  For these reasons, this

8   was not a specific and legitimate reason, supported by substantial evidence, to

9   reject Dr. Prakash's opinions.

10          In discrediting the opinion, the ALJ also generally relied on the purpose for

11  which the reports were created (obtaining state benefits), and Plaintiff's perceived

12  incentive to overstate his symptoms and complaints in order to obtain state

13  benefits.  Tr. 21.  It is well settled in the Ninth Circuit that the purpose for which

14  reports are obtained does not provide a legitimate basis for rejecting them.  *See*

15  *Lester*, 81 F.3d at 832  (the ALJ improperly relied on fact that reports were

16  obtained by the claimant's attorney for the purpose of litigation; purpose for which

17  reports are obtained does not provide a legitimate basis for rejecting them).  Nor is

18  Plaintiff's alleged incentive to exaggerate, in order to obtain benefits, with no

19  specific support in the record, a legitimate basis for rejecting Dr. Prakash's

20

opinions.  The Court finds that the ALJ did not provide specific and legitimate

reasons for giving Dr. Prakash's opinions limited weight.

On remand, the ALJ must reconsider Dr. Prakash's opinions.[3]  Remand is

additionally appropriate because there is medical evidence that Plaintiff is less

limited than Dr. Prakash and other sources opined, meaning the ALJ should

reconsider all of the medical opinion evidence on remand in order to make a

disability determination.  For example, the ALJ elected to give "great weight" to

_____

[3] Plaintiff generally argues the ALJ's RFC and hypothetical failed to account for

Plaintiff's limitations, as opined by Plaintiff's "treating and examining providers."

ECF No. 14 at 19.  As discussed above, the ALJ erred by rejecting examining

provider Dr. Prakash's opinions that Plaintiff was limited to sedentary work, and

by assigning instead an RFC for a range of light work, Tr. 18-19, without

providing specific and legitimate reasons supported by substantial evidence, for

discounting the opinions.  Thus, on remand, the ALJ should reassess the RFC and,

if necessary, reconsider the hypothetical posed by the ALJ to ensure it properly

includes all of Plaintiff's physical limitations supported by substantial evidence.

*See Osenbrock v. Apfel,* 240 F.3d 1157, 1165 (9th Cir. 2001) ("ALJ is free to

accept or reject restrictions in a hypothetical question that are not supported by

substantial evidence.").

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

the opinion of Dr. Drenguis, who performed a consultative examination in April

2012.  Tr. 22 (citing Tr. 410-14).  Dr. Drenguis reviewed Plaintiff's then-current

2012 x-rays and examined Plaintiff.  Tr. 22 (citing Tr. 411-13).  He opined that

Plaintiff could sit, stand, or walk for six hours out of an eight hour day.  Tr. 22

(citing Tr. 413).  Dr. Drenguis further opined that Plaintiff was limited to lifting

and carrying 20 pounds occasionally and lifting and carrying ten pounds

frequently.  Tr. 22 (citing Tr. 413).  Additionally, the ALJ credited the opinion of

agency reviewing physician Dr. Hurley, who performed a record review in July

2012 and assessed an RFC for light work.  Tr. 22 (citing Tr. 139-40).  The ALJ is

responsible for "resolving conflicts in medical testimony, and for resolving

ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  On

remand, the ALJ will reconsider these opinions.

    *2. Dr. Chau*

    On August 30, 2011, treating physician Dr. Chau opined that Plaintiff could

only do the lifting of sedentary work, and in Plaintiff's current status, he was

unable to work on a regular basis.  Tr. 20 (citing Tr. 350, 356).  Dr. Chau further

indicated that he was unsure whether Plaintiff had scheduled, or was in the process

of scheduling, carpal tunnel release surgery.[4]  Tr. 351.  Because Dr. Chau's opinion

_____

[4] As of the time of the hearing, Plaintiff had not undergone carpal tunnel release

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

was contradicted by Dr. Drenguis and Dr. Hurley, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Chau's opinion. *Bayliss,* 427 F.3d at 1216. The ALJ gave Dr. Chau's opinion limited weight. Tr. 21.

First, as with Dr. Prakash, the ALJ again found that the DSHS evaluations, including Dr. Chau's, again are largely based on Plaintiff's self-reported symptoms and the ALJ found Plaintiff less than credible. Tr. 21. As noted, if a treating providers' opinion is based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Tommasetti,* 533 F.3d at 1041); *see also Bayliss*, 427 F.3d at 1217). However, as noted, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162 (citing *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir 2008)). Here, as with Dr. Prakash, it is not clear that Dr. Chau's opinion was based "to a large extent" on Plaintiff's self-reports.

surgery. Tr. 19 (citing Tr. 68) (noting Plaintiff testified that although he had carpal tunnel syndrome and was supposed to have surgery on both hands, he had not because he was nervous about doing it).

1        Dr. Chau's form indicated that the *report is from records*, and that a physical

2   evaluation for incapacity was not performed.  Tr. 351 (emphasis added).  Dr.

3   Chau's chart notes, also dated August 30, 2011, indicated that cervical spine x-rays

4   showed multiple level degenerative arthritis with spurring.  Tr. 352.  This objective

5   evidence contradicts the ALJ's general finding that Dr. Chau's report was likely

6   "largely based" on Plaintiff's less than credible self report.  The Court finds that

7   this was not a legitimate basis for rejecting Dr. Chau's opinion.

8        The ALJ next gave Dr. Chau's opinion limited weight because, again, as the

9   assessment was for a DSHS evaluation, the ALJ opined that Plaintiff had an

10  incentive to overstate his symptoms and complaints in order to qualify for state

11  benefits.  Tr. 21.  As previously noted, Plaintiff is correct that the purpose for

12  which medical reports are prepared does not provide a legitimate basis for rejecting

13  them, s*ee Lester*, 81 F.3d at 832, and neither is there any basis for speculating that

14  Plaintiff exaggerated his complaints to Dr. Chau in order to obtain state benefits.

15       The ALJ further found that, with the forms completed by Dr. Chau (and by

16  treating physician Dr. Leedy) "the possibility always exists that a doctor may

17  express an opinion in an effort to assist a patient with whom he or she

18  sympathizes," and, moreover, "patients can be quite insistent and demanding in

19  seeking supportive notes or reports," and doctors may provide these to satisfy their

20  patients and "avoid unnecessary doctor/patient tension."  Tr. 21.  The ALJ then

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

found that these motives are more likely when the opinion in question departs substantially from the rest of the record.  Tr. 21.

Whether physicians sympathize with their patients and/or wish to avoid tension in their physician/patient relationships is speculation.  Here, there is no clear support for this suggestion.  *See Lester,* 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.") (citing *Ratto v. Secretary*, 839 F. Supp. 1415, 1426 (D.Or. Aug. 13, 1993)); *Payton v. Colvin*, 632 Fed. App'x 326, 327 (9th Cir. 2015) (unpublished) (finding the ALJ did not provide "specific and legitimate reasons" to reject four treating physicians' opinions, in part, because the ALJ speculated that the treating physicians supported plaintiff's application for benefits out of sympathy or to avoid tension with her).  These were not specific and legitimate reasons, supported by substantial evidence, to reject Dr. Chau's opinion.

Next, the ALJ found that Dr. Chau's opinion was inconsistent with Plaintiff's activities.  Tr. 19, 21.  An ALJ may discount a medical source opinion to the extent it conflicts with the Plaintiff's daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  In support of this finding, the ALJ cited Plaintiff's ability to live independently, care for himself, do chores, and walk his dog.  Tr. 19 (citing, in part, Tr. 410-14, Dr. Drenguis's evaluation).  In April 2012, Plaintiff reported to Dr. Drenguis that he was able to read a book

1    and watch a movie.  Tr. 19 (citing Tr. 410).  Plaintiff further reported that he lived

2    with his sister; took care of all of his daily personal needs; assisted in preparing

3    meals; performed light household chores; and spent most of his time reading or

4    playing video games.  Tr. 19 (citing Tr. 410).  In addition, Plaintiff reported that

5    with strenuous activity, he experienced pain in his neck, back, and shoulders.  Tr.

6    19 (citing Tr. 410).

7          The ALJ additionally relied on Plaintiff's report of functioning to Dr. Orr in

8    March 2012.  Tr. 19 (citing Tr. 397-402).  Plaintiff told Dr. Orr that he did laundry,

9    yardwork, cooked, and helped with household chores; in addition, Plaintiff told Dr.

10   Orr that he made walking sticks, apparently as a hobby.  Tr. 19 (citing Tr. 399).

11   Further, the ALJ relied on Plaintiff's report of functioning to Dr. Moon in January

12   2014.  Tr. 19 (citing Tr. 462-66).  Plaintiff told Dr. Moon that he lived alone in an

13   RV; usually got up at noon; took his dog for a walk; did some chores; watched

14   television; had very little contact with people; and went to sleep between nine and

15   ten o'clock at night.  Tr. 19-20 (citing Tr. 463).

16         Even if the Court concurred that Plaintiff's daily activities were inconsistent

17   with Dr. Chau's assessed limitations, this reason alone would not support the

18   rejection of Dr. Chau's opinion, given the Court's rejection of the other reasons.  In

19   the Court's view, in light of the necessity to remand for reconsideration of Dr.

20   Prakash's opinions discussed above, the ALJ should reconsider all of the medical

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

1  opinion evidence, including Dr. Chau's opinion.  The ALJ did not provide specific,

2  legitimate reasons to give limited weight to Dr. Chau's opinion.

3      Plaintiff cites medical evidence in support of his contention that his

4  "conditions could produce the limitations assessed by Dr. Chau," and the ALJ

5  erred in finding otherwise, that is, the ALJ erred by rejecting Dr. Chau's assessed

6  limitations.  ECF No. 14 at 14.[5]  On remand the ALJ should reconsider all of the

7  _____

8  [5] As support, Plaintiff cites a treatment note from Dr. Chau.  ECF No. 14 at 12-13

9  (citing Tr. 352 (On August 15, 2011, Dr. Chau noted significant forward

10  protruding neck posture with poor movement; Plaintiff walked with a reciprocal

11  gait)).  However, Dr. Chau's notes dated two weeks later, on August 30, 2011,

12  indicated Dr. Chau observed that Plaintiff was in no distress, sat up well, and had

13  fair finger dexterity.  Tr. 352.  Plaintiff also cited medical evidence showing that

14  conduction studies showed he has CTS.  Tr. 353.  The ALJ relied on other

15  evidence that indicated Plaintiff did not suffer disabling limitations as a result of

16  CTS -- evidence that Plaintiff does not address.  *See* Tr. 19 (citing Tr. 68 (the ALJ

17  found that, as of the hearing in August 2014 [three years after Dr. Chau's more

18  limiting opinion], Plaintiff had failed to undergo recommended surgery to treat this

19  condition); Tr. 68 (indicating that perhaps it was not disabling)).  In addition, the

20  ALJ relied on Dr. Drenguis's April 2012 opinion, his examination of Plaintiff, his

1    medical opinion evidence.

2        *3. Dr. Leedy*

3        Next, Plaintiff contends the ALJ failed to properly credit the November

4    2012 opinion of treating physician Dr. Leedy.  ECF No. 14 at 14 (citing Tr. 421-

5    22).  Dr. Leedy managed Plaintiff's medications.[6]  The ALJ found that in 2012, Dr.

6    Leedy opined that Plaintiff suffered from chronic low back pain and osteoarthritis

7    in his cervical spine, with a limited range of motion in his neck and bilateral hip

8    pain.  Tr. 20 (citing Tr. 421-22).  Dr. Leedy stated that Plaintiff complained of pain

9    _____

10   review of the 2012 x-rays, and his opinion that Plaintiff's RFC was greater than

11   assessed by Dr. Chau.  Tr. 16, 20 (citing Tr. 405-08 (2012 imaging), Tr. 410-14

12   (Dr. Drenguis's opinion)).  Here, because there is conflicting medical evidence, the

13   ALJ will need to reconsider all of the medical opinion evidence on remand.

14   [6] In January 2014, Plaintiff told examining psychologist Dr. Moon that Dr. Leedy

15   had been prescribing Adderall and citalopram, for ADHD and anxiety/depression,

16   for seven years, and had prescribed Flexeril and hydrocodone for three years.  Tr.

17   462.  With respect to this prescribed medication, the ALJ found that in August

18   2011, treating physician Dr. Chau opined that Plaintiff was using large amounts of

19   hydrocodone, prescribed by Dr. Leedy; Dr. Chau recommended considering a

20   different, long acting medication.  Tr. 16 (citing Tr. 356).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

1    with sitting and standing, not alleviated by breaks every two hours.  Tr. 20 (citing

2    Tr. 421).  In addition, Dr. Leedy opined he doubted that Plaintiff was able to work,

3    and, if he tried to do so, Plaintiff would likely miss work three days a month.   Tr.

4    20 (citing Tr. 422).

5         Dr. Leedy also completed a DSHS form in December 2013.  Tr. 20 (citing

6    Tr. 453-55).  Here, Dr. Leedy opined that Plaintiff suffered from marked

7    interference in the ability to function, and he was limited to sedentary work.  Tr. 20

8    (citing Tr. 454-55).  The ALJ gave Dr. Leedy's opinions little weight, for many of

9    the same unsupported general reasons that she relied on when she discredited Dr.

10   Prakash's and Dr. Chau's opinions.  Because Dr. Leedy's opinions were

11   contradicted by Dr. Drenguis and Dr. Hurley, the ALJ was required to give specific

12   and legitimate reasons supported by substantial evidence for affording Dr. Leedy's

13   opinion little weight.  *Bayliss*, 427 F.3d at 1216.

14        First, as with Dr. Prakash and Dr. Chau, the ALJ again found that Dr.

15   Leedy's opinion was based to a large extent on Plaintiff's unreliable self-report.

16   Tr. 21.  As noted, the ALJ may reject an opinion based to a large extent on a

17   claimant's self-report.  *Ghanim*, 763 F.3d at 1162.  Here, however, as with the

18   other reports, it is again not clear that Dr. Leedy's opinion was largely based on

19   Plaintiff's self-reports rather than objective findings.  For example, in November

20   2012, Dr. Leedy noted that Plaintiff's range of motion with neck flexion and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

extension were decreased, an objective finding not based on self-report.  Tr. 421.

Similarly, in December 2013, Dr. Leedy noted that Plaintiff had decreased range of

motion in his right hip, Tr. 458, another objective finding.  As noted, when an

opinion is not more heavily based on based on a claimant's self-report than on

clinical findings, there is no evidentiary basis for rejecting it.  *Ghanim*, 763 F.3d at

1162.  Here, the ALJ provided no independent evaluation of this opinion and there

is objective evidence that contradicts the ALJ's reason.  The Court finds that this

was not a legitimate basis for rejecting Dr. Leedy's opinion.

The ALJ next gave Dr. Leedy's opinion limited weight because, again, as

assessment was for a DSHS evaluation, the ALJ opined that Plaintiff had an

incentive to overstate his complaints in order to obtain state benefits.  Tr. 21.  As

previously noted, Plaintiff is correct that the purpose for which a report is created

does not provide a basis for rejecting it, *see Lester,* 81 F.3d at 832, and the ALJ did

not articulate any basis for speculating that Plaintiff exaggerated his complaints to

Dr. Leedy to obtain state benefits.  This was not a legitimate reason to reject Dr.

Leedy's opinions.

The ALJ further found, with the forms completed by Dr. Leedy, as with Dr.

Chau, the possibility exists that physicians may sympathize with their patients and

exaggerate a claimant's condition in a sympathetic attempt to assist them with

obtaining benefits or to avoid patient conflict.  Tr. 21.  As previously noted, the

ALJ cited no evidence in the record that supports this speculation. *See Lester,* 81

F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to

help their patients collect disability benefits.") (citation omitted); *see also Payton*,

632 F.App'x at 327 (finding the ALJ failed to provide specific and legitimate

reasons to reject four treating physicians' opinions and erred by relying, in part, on

speculation that the treating physicians supported Payton's benefit application out

of sympathy or to avoid tension with her).  These were not specific and legitimate

reasons, supported by substantial evidence, for rejecting Dr. Leedy's opinions.

The ALJ found that Dr. Leedy's opinions are less persuasive because they

are without substantial support from other evidence of record.  Tr. 21 (citing Tr.

421-22, 454-55).  An ALJ may discredit a medical opinion that is unsupported by

the record as a whole or by objective medical findings.  *Batson v. Comm'r of Soc.*

*Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, however, because the

ALJ erred when weighing the medical evidence, this is not a specific, legitimate

reason supported by substantial evidence to discredit treating physician Dr.

Leedy's opinions.

Next, the ALJ rejected Dr. Leedy's opinions because Plaintiff's activities are

inconsistent with being disabled.  Tr. 19.  An ALJ may discount an opinion that is

inconsistent with Plaintiff's reported functioning.  *See Morgan*, 169 F.3d at 601-

02.  Here, the ALJ found that Plaintiff's activities contradicted Dr. Leedy's

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

assessment of a debilitating impairment.  Tr. 19-20.  The ALJ found that in March 2012, Plaintiff told Dr. Orr that he did laundry, yardwork, cooked, fished, helped with household chores, and, as a hobby, made walking sticks.  Tr. 19 (citing Tr. 399).  The ALJ further found that in April 2012, Plaintiff told Dr. Drenguis that he took care of all of his personal needs; he helped prepare light meals and assisted with household chores; more strenuous activity caused pain in his neck, back, and shoulders; he watched movies and read books; in addition, Plaintiff reported that he spent most of his time playing video games or reading.  Tr. 19 (citing Tr. 410). In addition, the ALJ further found that in January 2014, Plaintiff told examining psychologist Dr. Moon that he lived alone in an RV; on a typical day, he got up at noon, walked his dog, did some chores, and watched television; Plaintiff reported as well that he had very little contact with people, and went to bed between nine and ten nightly.  Tr. 19-20 (citing Tr. 463).  Here, the ALJ's reason, standing alone, is not sufficiently specific, legitimate and supported by substantial evidence to support the ALJ's rejection of Dr. Leedy's opinions.

*4. Dr. Moon*

Dr. Moon performed a psychological evaluation of Plaintiff in January 2014. Tr. 462-67.  Dr. Moon assessed four marked and numerous moderate limitations in Plaintiff's ability to work.  Tr. 464-65.  Because Dr. Moon's opinion was contradicted by Dr. Orr and Dr. Brown, the ALJ was required to provide specific

and legitimate reasons for rejecting Dr. Moon's opinion. *Bayliss,* 427 F.3d at

1216.  The ALJ gave Dr. Moon's opinion little weight.

The ALJ rejected Dr. Moon's opinion, completed for DSHS purposes, as

again largely based on Plaintiff's self-reported symptoms, which were found not

reliable, Tr. 21, and as again based on the purpose of report, to obtain state

benefits. Tr. 21.  As previously discussed, these are not specific legitimate reasons

supported by the record to discount contradicted medical opinions.

Next, the ALJ rejected Dr. Moon's opinion because the DSHS rules

governing the definition and assessment of disability differ from those of the

Social Security Administration.  Tr. 21.  The regulations provide that the amount

of an acceptable source's knowledge of Social Security disability programs and

their evidentiary requirements may be considered in evaluating an opinion,

regardless of the source of that understanding.  20 C.F.R. § 404.1527.  Although

state agency disability rules may differ from Social Security Administration rules

regarding disability, it is not always apparent that the differences in rules affect a

particular physician's report without further analysis by the ALJ.[7]  There may be

_____

[7] Here, the ALJ merely asserted, without analysis, that DSHS forms define

"marked" differently from the Social Security Administration, and the DSHS

forms "make it clear that both the standards for completing the form, and the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 26

1    situations where less weight should be assigned to a DSHS medical opinion based

2    on the differences in definitions and rules, but substantial evidence does not

3    support that finding here.  This is therefore also not a specific and legitimate reason

4    for rejecting Dr. Moon's opinion.

5           Next, the ALJ gave Dr. Moon's opinion less weight because the evaluation

6    form that she used did not distinguish between the level of impairment with and

7    without drug and alcohol abuse, and the evaluation was conducted during a time

8    Plaintiff said that he was abusing drugs and alcohol.  Tr. 21 (citing Tr. 463).  This

9    is a specific and legitimate reason.  *See Andrews*, 53 F.3d at 1039 (ALJ found that

10   examining psychologists' conclusions regarding depression, post-traumatic stress

11   disorder and schizotypal personality disorder were unreliable due to claimant's

12   contemporaneous substance abuse); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.

13

14   public interest served by the form," differ from "the standards and objectives of

15   these hearings under the authority of the [SSA]."  Tr. 21, 464.  (The DSHS form

16   defines "marked limitations" as "causing very significant interference" with the

17   ability to perform work-related activities; the regulations indicate that a marked

18   limitation is one of such degree as "to interfere seriously with [a claimant's] ability

19   to function independently, appropriately, effectively, and on a sustained basis."  20

20   C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.00(C)(1)).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27

1    1989) (an ALJ may properly consider a claimant's lack of credibility and the extent

2    to which his physician's opinion is influenced by the claimant's own information).

3         The ALJ found Plaintiff told Dr. Moon that, for the past three to four years,

4    he used an "eighth [of an ounce] of marijuana a week to relax;" drank eight beers

5    per occasion every two weeks; and previously lost a job due to drinking.  Tr. 21

6    (citing Tr. 463).  The ALJ found that Dr. Moon's diagnoses included rule out

7    alcohol abuse.  Tr. 21 (citing Tr. 464).  In addition, Dr. Moon recommended that

8    Plaintiff undergo a chemical dependency assessment or treatment.  Tr. 465.  The

9    ALJ found that Plaintiff's admitted contemporaneous substance abuse rendered Dr.

10   Moon's opinion less reliable.  Tr. 21 (citing Tr. 463).

11        This was a specific, legitimate reason to give limited weight to Dr. Moon's

12   opinion; however, given the numerous improper reasons cited by the ALJ to reject

13   the opinion, on remand the ALJ should revisit Dr. Moon's opinion.  In light of the

14   necessity to remand for reconsideration of the opinions of Dr. Prakash, Dr. Chau,

15   and Dr. Leedy as discussed above, the ALJ should reconsider all of the medical

16   opinion evidence, including Dr. Moon's opinion.

17        The ALJ additionally rejected Dr. Moon's opinion in favor of that of another

18   examining physician, Dr. Orr (Tr. 397-402), as well as reviewing physician Dr.

19   Brown.  Tr. 21-22 (citing Tr. 135-37).  The ALJ found that Dr. Orr performed a

20   consultative examination in March 2012, which yielded largely benign findings.

Tr. 16-17, 20, 22 (citing Tr. 397-402).  The ALJ found, for example, that Dr. Orr

assessed a GAF of 68, indicating no more than mild symptoms or difficulty

functioning.  Tr. 17 (citing Tr. 401).  The ALJ further found, as another example,

that Dr. Orr opined that Plaintiff appeared to be managing depression; moreover,

there were "no significant indicators of anxiety, or other emotional issues."  Tr. 17

(citing Tr. 401).  Although Dr. Orr opined that sustained concentration is

interrupted by pain, and adaptation is below average, given interference from pain

and *significant memory problems*, Dr. Orr also opined that Plaintiff demonstrated

good concentration, had problems in the area of abstract thinking, had a reasonably

good fund of knowledge, and was socially involved.  Tr. 17 (citing Tr. 401)

(emphasis added).  The ALJ further found that Dr. Orr additionally opined that

Plaintiff appeared able to use reasoning to solve problems and assess situations,

and his understanding appeared to be good, Tr. 17 (citing Tr. 401), indicating less

than disabling mental limitations.

Plaintiff contends that the ALJ erred because she elected to rely on Dr. Orr's

report, and Dr. Orr, like Dr. Moon, also failed to distinguish between limitations

with and without DAA.  ECF No. 14 at 14.  The difference, however, is that first,

Dr. Orr arguably found mainly mild symptoms and limitations, indicating DAA

would not be material in any event; whereas Dr. Moon's limitations, if credited,

would result in finding Plaintiff disabled, meaning that the materiality of DAA

would need to be determined; second, it is unclear if Plaintiff was actively using

non-prescribed drugs or alcohol at the time of Dr. Orr's 2012 evaluation.  Plaintiff

told Dr. Orr in 2012 that he only drank "a little bit," Tr. 397, but told Dr. Moon in

2014 that he had smoked marijuana regularly for three to four years.  Tr. 463.

Thus, while it was obvious that substance abuse was active at the time of Dr.

Moon's evaluation in 2014 by his own admission, Plaintiff's statements regarding

DAA in 2012 are contradictory.

Plaintiff additionally contends that the ALJ erred when she purported to

credit Dr. Orr's opinion, while at the same time she failed to credit Dr. Orr's

statement that Plaintiff's test "score indicated marked memory impairment."  ECF

No. 18 at 9 (citing Tr. 400).  Here, Dr. Orr's opinion is somewhat ambiguous.  The

ALJ found that although Dr. Orr diagnosed memory impairment, she assessed a

GAF of 68, indicative of no more than mild symptoms or functional difficulty.  Tr.

17 (citing Tr. 401).  It could be argued that the ALJ accommodated any memory

limitations by limiting Plaintiff to no more than lower semi-skilled tasks (SVP 3)

with no frequent changes in routine.  Tr. 17-18 (citing Dr. Orr at Tr. 400-01); Tr.

19 (assessed RFC).  However, because remand is required for other reasons as

indicated herein, on remand the ALJ must reconsider Dr. Orr's assessed marked

memory impairment and Dr. Moon's opinion to determine if there are any greater

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 30

limitations from memory or other mental impairment than those included in the

assessed RFC.

**B.  Adverse Credibility Finding**

Next, Plaintiff faults the ALJ for failing to credit his symptom complaints. ECF No. 14 at 15-18.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

In discrediting Plaintiff's symptom claims, the ALJ found that the objective medical evidence did not support the degree of physical or psychiatric limitation alleged by Plaintiff. Tr. 19-20, 22. Because the medical evidence was not properly evaluated, on remand the ALJ should also reconsider the credibility finding. Whether a proper evaluation of the medical opinions can be reconciled with the ALJ's existing adverse credibility determination is for the Commissioner to decide in the first instance.

**C. Lay Opinion Evidence**

Plaintiff faults the ALJ for failing to weigh or discuss the lay testimony of his mother, Sally Grego. ECF No. 14 at 18-19 (citing Tr. 347-48). However, the ALJ could not have weighed this opinion because it was proffered at least three months after the ALJ rendered her decision on August 29, 2014. *Compare* Tr. 24 (date of the ALJ's decision) *with* Tr. 347-48 (Ms. Grego's opinion dated December 10, 2014).[8] Because the Court reverses the ALJ's decision for other reasons as stated herein, the ALJ should consider the lay witness testimony on remand.

**D. Step Five Determination**

Finally, Plaintiff alleges that the ALJ's step five determination is not supported by substantial evidence because the ALJ's hypothetical omitted such physical limitations as the need to lie down during the day, occasionally miss days of work each month, and experience limited neck movement. ECF No. 14 at 19-20. Further, Plaintiff contends that the ALJ's hypothetical failed to include limitations that would account for Dr. Orr's finding that Plaintiff's test results

---

[8] Plaintiff's reply cites Ms. Grego's opinion, *see* ECF No. 18 at 8-9, but does not address the Commissioner's correct contention that it was the Appeals Council, not the ALJ, who had the opportunity to consider Ms. Grego's opinion. *See* ECF No. 17 at 14-15 (citing Tr. 5, 347-48).

showed marked memory impairment.[9]  ECF No. 14 at 19-20 (citing Tr. 400-01).

The ALJ's hypothetical must be based on medical assumptions supported by

substantial evidence in the record which reflect all of a claimant's limitations.

*Osenbrock*, 240 F.3d at 1165.  The Court has determined that the ALJ's assessment

of the medical and other evidence was not supported by substantial evidence and

free of legal error.

## CONCLUSION

The ALJ's decision was not supported by substantial evidence and free of

legal error.  On remand, the ALJ must reconsider the medical opinion evidence,

and provide legally sufficient reasons for evaluating these opinions, supported by

substantial evidence.  Additionally, the ALJ must reconsider the Plaintiff's

credibility analysis and consider the lay testimony.  If necessary, the ALJ should

order additional consultative examinations and/or take testimony from medical

experts.  Finally, the ALJ should reassess Plaintiff's RFC and, if necessary, take

additional testimony from a vocational expert which includes all of the limitations

credited by the ALJ.

---

[9] The Court previously addressed the ALJ's findings with respect to Dr. Orr's opinion.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 34

**IT IS ORDERED:**

1.  Plaintiff's motion for summary judgment (ECF No. 14) is **GRANTED** and the matter remanded to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.  Defendant's motion for summary judgment (ECF No. 17) is **DENIED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE PLAINTIFF**, provide copies to counsel, and **CLOSE** the file.

DATED this 15th day of March, 2017.

_s/ Mary K. Dimke_
MARY K. DIMKE
U.S. MAGISTRATE JUDGE